1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    SAMPSON MEIER,                          Case No.  21-cv-05504-DMR

8                    Plaintiff,

9          v.                               **ORDER ON MOTION TO DISMISS**
                                            **FIRST AMENDED COMPLAINT**
10   CITY OF BRISBANE, et al.,
                                            Re: Dkt. No. 25
11                   Defendants.

12         Defendants City of Brisbane ("Brisbane") and Brisbane Police Officer Abraham Sevilla

13   move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Sampson Meier's

14   first amended complaint ("FAC").  [Docket No. 25.]  This matter can be determined on the papers.

15   Civ. L.R. 7-1(b).  For the following reasons, the motion is granted in part and denied in part.

16   **I.      BACKGROUND**

17         **A.      Factual Allegations**

18         Meier makes the following allegations in the FAC (Docket No. 24): Brisbane owned,

19   operated, and controlled the property and railroad tracks located near 3501 Bayshore Boulevard in

20   Brisbane.  It erected "a dangerous fence on the property that violated mandatory directives,

21   statutes, ordinances, and laws requiring proper fencing . . .  [and] posting of warning signs

22   regarding trespassing or dangerous conditions."  FAC ¶ 9.  On October 10, 2020, Sevilla observed

23   Meier walking in the area known as the Brisbane Lagoon at 3501 Bayshore Boulevard.  Meier was

24   on the opposite side of the fence from Sevilla.  Sevilla took Meier into custody for trespassing by

25   ordering Meier to come to the fence and turn over his wallet and cell phone to Sevilla through the

26   fence.  Sevilla then ordered Meier to climb the nine-foot fence even though two other officers

27   were present, including one on the same side of the fence as Meier.  Additionally, there was a

28   break in the fence approximately 75 yards from Meier.  *Id.* at ¶¶ 10, 11, 14.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

Meier alleges that the fence was "adorned with sharp metal spikes and curved grates that

2 were designed to make climbing the fence more dangerous." There were no warning signs posted

3 in the area disclosing the fence's dangerous condition. *Id*. at ¶ 11. Meier further alleges that

4 Brisbane constructed the fence in violation of municipal code requirements regarding height

5 requirements and with prohibited features, "such as razor wire, barb [sic] wire, or similar materials

6 (sharp jagged metal spikes and curves lower portions) without approval," and that Brisbane

7 "allowed the fence to be maintained in this dangerous condition[.]" *Id*. at ¶¶ 12-13. Meier

8 followed Sevilla's order, climbed the fence, and was injured when he slipped, "severing tendons

9 and nerves in both hands on the sharp and jagged portions of the fence." *Id*. at ¶ 15.

10

Meier brings the following claims: 1) negligence against Brisbane and Sevilla; 2) premises

11 liability against Brisbane; and 3) a 42 U.S.C. § 1983 claim for violation of the Fourth Amendment

12 based on the use of excessive force against Brisbane and Sevilla, including a claim for municipal

13 liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658

14 (1978), based on Brisbane's failure to train and failure to discipline.

15

**B.    Procedural History**

16

Meier filed this lawsuit on March 2, 2021 against Defendants Brisbane; County of San

17 Mateo; Caltrans; and Sevilla. Meier dismissed his claims against the County of San Mateo on

18 May 24, 2021 and Defendants Brisbane and Sevilla removed the case to this court on July 16,

19 2021. [Docket No. 1-3 at ECF pp. 19-20.] Meier dismissed his claims against Caltrans on August

20 25, 2021. [Docket No. 15.] On October 28, 2021, the court granted in part and denied in part

21 Defendants' motion to dismiss the complaint. [Docket No. 19 (Minute Order).] The court

22 dismissed Meier's section 1983 claim against Brisbane with leave to amend and dismissed a

23 products liability claim with prejudice. *Id*. Meier timely filed the FAC. Defendants then filed

24 this motion.

25

**II.    LEGAL STANDARD**

26

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

27 the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

28 When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all

2

1   of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

2   (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal

3   theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to

4   relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

5   *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

6   2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual

7   content that allows the court to draw the reasonable inference that the defendant is liable for the

8   misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged

9   must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of

10  a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing

11  *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir.

12  2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir.

13  2002).

14         As a general rule, a court may not consider "any material beyond the pleadings" when

15  ruling on a Rule 12(b)(6) motion.  *Lee*, 250 F.3d at 688 (citation and quotation marks omitted).

16  However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack*

17  *v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents

18  whose contents are alleged in a complaint and whose authenticity no party questions, but which

19  are not physically attached to the pleading," without converting a motion to dismiss under Rule

20  12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.

21  1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26.  The court need not accept

22  as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. U.S. Bankr*.

23  *Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

## III.    DISCUSSION

25         Defendants move to dismiss all of Meier's claims except for the section 1983 claim against

26  Sevilla.  They also move to dismiss Meier's claim for punitive damages.

27         As to the *Monell* claim against Brisbane, Defendants argue that the FAC does not

28  sufficiently allege a custom and practice of excessive force based on inadequately training,

United States District Court
Northern District of California

supervision, and discipline, and does not allege that any such custom and practice caused the alleged constitutional violation.  Mot. 8-10.  Meier does not respond to these arguments in his opposition and thus has conceded his *Monell* claim.  That claim is dismissed with prejudice.

### A. Negligence

The FAC alleges that Sevilla acted negligently under California Government Code sections 815.2, 815.4, and 815.6 and that Brisbane can be held vicariously liable for its officers' actions.  *Id*. at ¶ 22.  Defendants argue that the references to sections 815.4 and 815.6 are not "sufficiently pleaded."  Mot. 10.  Defendants do not move to dismiss the negligence claim as to Sevilla.[1]  They also do not challenge the reference to California Government Code section 815.2, which imposes statutory liability on counties under the doctrine of respondeat superior for certain acts of county employees.  Therefore, they do not challenge the FAC with respect to Brisbane's liability for Sevilla's alleged negligence.[2]  Instead, they challenge the alternative bases pleaded in the FAC for holding Brisbane liable for Sevilla's alleged negligence pursuant to sections 815.4 and 815.6.

---

[1] In order to establish a negligence claim, Plaintiff must establish "(1) a legal duty to use due care; (2) a breach of that duty; and (3) injury that was proximately caused by the breach."  *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1164 (N.D. Cal. 2009) (citing *Ladd v. Cnty. of San Mateo*, 12 Cal.4th 913, 917 (1996)).  Under California law, "police officers have a duty not to use excessive force."  *Id*. (citing *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1101 (2004)).  The FAC alleges that Sevilla was negligent in using excessive force, among other things, and that he was injured as a result of Sevilla's breach.  *See* FAC ¶¶ 21, 23.

[2] Section 815.2 states:

> (a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

> (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.

Cal. Gov't Code § 815.2.  "Since the enactment of the California Tort Claims Act in 1963 (§ 810 et seq.), a governmental entity can be held vicariously liable when a police officer acting in the course and scope of employment uses excessive force or engages in assaultive conduct."  *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 215–16 (1991) (collecting cases; noting "[t]he decisions cited have recognized, at least implicitly, that vicarious liability is an appropriate method to ensure that victims of police misconduct are compensated.").

### 1.     California Government Code section 815.4

California Government Code section 815.4 provides that "[a] public entity is liable for injury proximately caused by a tortious act or omission of an independent contractor of the public entity to the same extent that the public entity would be subject to such liability if it were a private person.  Nothing in this section subjects a public entity to liability for the act or omission of an independent contractor if the public entity would not have been liable for the injury had the act or omission been that of an employee of the public entity."

Defendants note that the FAC does not name any independent contractor alleged to have committed "a tortious act or omission."  Mot. 10.  Accordingly, they argue, there is no basis for a claim under section 815.4.  *Id.*

Meier does not dispute that the FAC does not identify an independent contractor but argues that the FAC "alleges Doe defendants as additional liable entities causing [his] injury," and that "[t]his language incorporates any potential contractors that constructed the fence as agents or partners for Defendants."  Opp'n 8 (citing FAC ¶¶ 6, 7).

Meier's section 815.4 claim is dismissed.  Should he obtain leave in the future to amend the FAC to name additional Defendants who are independent contractors, he may seek leave to add the section 815.4 basis for Brisbane's liability at that time.

### 2.     California Government Code section 815.6

California Government Code section 815.6 provides that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

"Section 815.6 has three discrete requirements which must be met before governmental entity liability may be imposed under Government Code section 815.6: (1) an enactment must impose a mandatory duty; (2) the enactment must be meant to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered."  *San Mateo Union High Sch.*

United States District Court
Northern District of California

1   *Dist. v. Cty. of San Mateo*, 213 Cal. App. 4th 418, 428 (2013) (quotation marks and citation

2   omitted).  The first element requires that "the enactment at issue be obligatory, rather than merely

3   discretionary or permissive, in its directions to the public entity; it must require, rather than merely

4   authorize or permit, that a particular action be taken or not taken."  *Id.*

5   Meier alleges that Defendant Sevilla owed "mandatory duties" to Meier as a law

6   enforcement officer, including the duty to be professional and use reasonable force when taking

7   Meier into custody and to keep him safe once he was in custody, among others.  FAC ¶ 19.  The

8   FAC lists five purported mandatory duties from Brisbane Police Department policies or directives,

9   as well as the Fourth Amendment and the California Constitution regarding the use of force and

10  pain compliance techniques, keeping safe individuals in police custody, and ensuring that police

11  officers receive periodic training.  FAC ¶¶ 19, 20.  Defendants argue that even though the FAC

12  lists multiple "mandatory statutory duties," it "does not allege whether any of these

13  ordinances/statutes/rules even allege a mandatory duty," and that "even if they did, the FAC does

14  not allege what purported mandatory duty was breached, how the mandatory duty is alleged to

15  protect against the type of injury suffered by Plaintiff, or how his injury was proximately caused

16  by any breach."  Mot. 11.

17  In response, Meier states only that the FAC "lists several mandatory duties that Defendants

18  had regarding taking persons into custody; the use of force; keeping suspects safe; and training

19  regarding these duties," but does not set forth the specific provisions or provide authority

20  supporting his assertion that they impose "mandatory" duties on police officers.  These provisions

21  may in fact impose mandatory duties, but the FAC and opposition brief do not clearly establish

22  that they do.  Accordingly, Defendants' motion to dismiss Meier's section 815.6 claim is granted

23  with leave to amend.

24  **B.  Premises Liability**

25  Meier's premises liability claim is based on California Government Code section 835,

26  which is "[t]he sole statutory basis for imposing liability on public entities as property owners."

27  *Cerna v. City of Oakland*, 161 Cal. App. 4th 1340, 1347 (2008).  Section 835 provides:

28  Except as provided by statute, a public entity is liable for injury

6

caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Cal. Gov't Code § 835. "To state a cause of action against a public entity under section 835, a plaintiff must plead: (1) a dangerous condition existed on the public property at the time of the injury; (2) the condition proximately caused the injury; (3) the condition created a reasonably foreseeable risk of the kind of injury sustained; and (4) the public entity had actual or constructive notice of the dangerous condition of the property in sufficient time to have taken measures to protect against it." *Brenner v. City of El Cajon*, 113 Cal. App. 4th 434, 439 (2003).

Neither side sets forth or discusses the elements of the claim. Defendants appear to challenge the sufficiency of the FAC with respect to the first and second elements. *See* Mot. 5-7. First, Defendants argue that Meier has not adequately alleged the existence of a "dangerous condition" within the meaning of California Government Code section 835.

California Government Code section 830 defines dangerous condition as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used." Cal. Gov't Code § 830(a). A public entity may "protect against" such a condition by "repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition." Cal. Gov't Code § 830(b). "'The definition of dangerous condition is quite broad,' and it can reach property that is not dangerous in a colloquial sense." *Evans v. Bird Rides, Inc.*, No. 19-CV-01207-VC, 2019 WL 5864583, at *2 (N.D. Cal. Nov. 8, 2019) (quoting Cal. Gov't Code § 830 comments) (holding plaintiff with disabilities alleged "dangerous conditions of public property" based on scooters

1   "strewn about" public sidewalks).  "The existence of a dangerous condition is ordinarily a

2   question of fact but can be decided as a matter of law if reasonable minds can come to only one

3   conclusion."  *Cerna*, 161 Cal. App. 4th at 1347 (quotation marks and citation omitted).

4         Here, Defendants argue that there is no allegation that the fence was unsafe or defective or

5   that it "imposed a substantial risk of harm when used with due care and in a reasonably

6   foreseeable manner."  Mot. 5.  According to Defendants, Meier's claims are based on the

7   reasonableness of Sevilla's order to climb the fence, not the physical condition of the fence itself.

8   *Id*. at 6.

9         Defendants' position is not persuasive.  The California Supreme Court has explained that

10   "[m]ost obviously, a dangerous condition exists when public property is physically damaged,

11   deteriorated, or defective in such a way as to foreseeably endanger those using the property itself."

12   *Bonanno v. Cent. Contra Costa Transit Auth.*, 30 Cal. 4th 139, 148 (2003).  However, "public

13   property has also been considered to be in a dangerous condition because of the design or location

14   of the improvement, the interrelationship of its structural or natural features, or the presence of

15   latent hazards associated with its normal use."  *Id*. at 149 (emphasis removed) (quotation marks

16   and citation omitted) (discussing jury's finding that bus stop was a "dangerous condition" due to

17   its location, which caused users to be at risk from immediately adjacent property); *see Cerna*, 161

18   Cal. App. 4th at 1347-48 ("[a] dangerous condition exists when public property . . . possesses

19   physical characteristics in its design, location, features or relationship to its surroundings that

20   endanger users").

21         Under *Bonanno*, Meier need not allege a physical defect, damage, or deterioration in the

22   property at issue to allege a dangerous condition.  Instead, he may allege a dangerous condition

23   due to design, location, and features that endanger those using the property.  Meier plausibly

24   alleges the existence of a "dangerous condition" for which Brisbane may be held liable, i.e., the

25   presence of an unsafe fence on Brisbane's property.  The FAC alleges that Brisbane constructed

26   the fence in violation of municipal code requirements regarding height and prohibited features,

27   including razor wire, barbed wire, and "sharp jagged metal spikes" with curved lower portions,

28   and that it lacked approval to do so.  FAC ¶ 12.  It further alleges that these features "were

United States District Court
Northern District of California

United States District Court
Northern District of California

1   designed to make climbing the fence more dangerous" but that Brisbane failed to post warning

2   signs or notices near the fence disclosing its dangerous condition, and that Brisbane "allowed the

3   fence to be maintained in this dangerous condition without requiring it to be brought into

4   compliance with the Municipal Code[.]"  *Id*. at ¶¶ 11-13.

5          *Schonfeldt v. State of California*, 61 Cal. App. 4th 1462, 1468 (1998), cited by Defendants,

6   does not support a different outcome.  In *Schonfeldt*, a teenager climbed a "freeway fence" and ran

7   across a freeway, where he was struck by a truck and severely injured.  *Id*. at 1464.  His parents

8   sued the State of California, arguing that there were "four alleged defects surrounding" the

9   freeway that "created a dangerous condition [under section 835] funneling [their son] to climb a

10  fence and attempt to run across the freeway."  *Id*.  The four conditions were "(1) an unlit

11  pedestrian tunnel and muddy, narrow pedestrian walkways, (2) a freeway fence four feet, ten

12  inches high instead of recommended height of six feet, (3) a hole in the fence on the other side,

13  and (4) lack of signs warning freeway drivers that pedestrians may illegally attempt to cross the

14  freeway at the instant location."  *Id*. at 1464-65.  The trial court granted the defendant's motion for

15  judgment on the pleadings and the judgment was affirmed on appeal.  Noting that "[p]ublic

16  entities have no duty . . . to prevent members of the public—including young children—from

17  scaling walls and fences erected for the purpose of keeping them out of areas of relative danger,"

18  the court held that "[n]one of the facts alleged . . . constitute[d] a dangerous condition, either by

19  themselves or in combination," as the teenager "chose to do something no reasonable person using

20  due care would do under the circumstances alleged—jump a fence and run across a freeway."  *Id*.

21  at 1468.  The court also rejected the claim that the fence, which was "slightly shorter than state

22  maintenance manual guidelines suggested," established "a dangerous condition of the freeway."

23  *Id*.

24          The basis for Defendants' reliance on *Schonfeldt* is not entirely clear, since that case does

25  not hold that fences are not "dangerous conditions" as a matter of law and the case is

26  distinguishable on its facts, as Meier does not allege that he climbed a fence into a dangerous area.

27  Rather, he alleges that the condition of the fence itself was dangerous.  Given that the issue of the

28  existence of a dangerous condition is "ordinarily a question of fact," the allegations in the FAC are

1   sufficient to plead the existence of a dangerous condition under section 835.  *See Cerna*, 161 Cal.

2   App. 4th at 1347.

3       Defendants also argue that because the FAC fails to plead a dangerous condition, Meier

4   has not alleged a causal connection between any defect in the fence and his injuries.  Mot. 7.

5   According to Defendants, "[t]he FAC contains no factual allegations that any physical defect of

6   the fence was the proximate cause of Plaintiff's injuries."  *Id*.  This argument is not persuasive as

7   it ignores the allegations in the FAC that the fence was constructed with "prohibited" features such

8   as razor wire, barbed wire, and "sharp jagged metal spikes" and that Meier "sever[ed] tendons and

9   nerves in both hands on the sharp and jagged portions of the fence."  *See* FAC ¶¶ 12, 15.  The

10  FAC adequately alleges that the dangerous condition caused his injuries.  *See id*. at ¶¶ 28, 29.

11      **C.    Punitive Damages**

12      The FAC requests punitive damages.  FAC 10(4).  It does not specify whether Meier seeks

13  punitive damages against Brisbane, Sevilla, or both Defendants.  Defendants move to dismiss the

14  request for punitive damages, arguing that punitive damages are not available as to Brisbane.

15  They also argue that the FAC does not allege facts to support an award of punitive damages as to

16  Sevilla.  Mot. 11-13.

17      Meier does not respond to Defendants' argument that punitive damages are not available as

18  to Brisbane and thus concedes the issue.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247,

19  271 (1981) (holding municipalities are immune from punitive damages under 42 U.S.C. § 1983);

20  Cal. Gov't Code § 818 (public entities not liable for punitive damages).

21      As to Sevilla, a jury may assess punitive damages under Section 1983 when a defendant's

22  conduct involves "reckless or callous indifference to the federally protected rights of others"

23  without regard to actual intent or malice.  *Smith v. Wade*, 461 F.2d 30, 56 (1983).  Here, the FAC

24  alleges that Sevilla "acted knowingly, maliciously, and with reckless or callous disregard for"

25  Meier's "health and constitutional rights," justifying an award of punitive damages.  FAC ¶ 8.  It

26  also alleges that Sevilla ordered Meier to climb a dangerous fence with "jagged sharp spikes and

27  curved grates."  *Id*. at ¶ 33.  These allegations are sufficient to allege a claim for punitive damages

28  based on the Section 1983 excessive force claim.

United States District Court
Northern District of California

United States District Court<br>Northern District of California

1    Regarding the negligence claim against Sevilla, punitive damages are available under

2  California law if a plaintiff proves "by clear and convincing evidence that the defendant has been

3  guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  Malice "includes the willful

4  and conscious disregard of the rights or safety of others."  Cal. Civ. Code § 3294(c)(1).  While

5  "punitive damages sometimes may be assessed in unintentional tort actions under Civil Code

6  section 3294," *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1004 (1993), "[g]enerally,

7  mere or even gross negligence will not support an award of punitive damages."  *Molina v. J.C.*

8  *Penney Co., Inc.*, No. C-14-04201-DMR, 2015 WL 183899, at *3 (N.D. Cal. Jan. 14, 2015)

9  (citations omitted); *Zayas v. Ortega*, No. 17-CV-02739-EMC, 2018 WL 11227735, at *21 (N.D.

10  Cal. Aug. 10, 2018), *aff'd in part, appeal dismissed in part,* 809 F. App'x 374 (9th Cir. 2020)

11  (granting summary judgment on claim for punitive damages where "only a negligence claim . . .

12  survives," citing *Lee v. Bank of Am.*, 218 Cal. App. 3d 914, 920, 267 Cal.Rptr. 387 (1990) (stating

13  that "punitive damages are allowed only upon a showing of 'oppression, fraud, or malice' which

14  appellant failed to allege[;] [n]egligence, even if gross or reckless, cannot justify punitive

15  damages")).  Meier offers no authority that punitive damages are available for a negligence claim

16  based on similar facts.  Accordingly, to the extent that the request for punitive damages is based

17  on the negligence claim against Sevilla, it is dismissed with prejudice.

## IV.   CONCLUSION

19    For the foregoing reasons, Defendants' motion to dismiss the FAC is granted in part and

20  denied in part.  Meier's claims under California Government sections 815.4 and 815.6 are

21  dismissed with leave to amend.  The *Monell* claim and Meier's claim for punitive damages against

22  Brisbane are dismissed with prejudice, as is the claim for punitive damages against Sevilla to the

23  extent it is based on the negligence claim.  Meier may file a second amended complaint by no later

24  than fourteen days from the date of this order.  He must plead his best case.

25    **IT IS SO ORDERED.**

26  Dated: February 22, 2022



_____

Donna M. Ryu

United States Magistrate Judge